IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ALMUS WILSON, MARILYN WILSON,          :
CHARMAINE COOPER, MARCO YAGUAL,  :
MARIA YAGUAL, NATALIE WILSON, and  :
RAYON MCLEAN                            :
                Plaintiffs          :
    v.                                     :          3:CV-04-1737
                         :          (CHIEF JUDGE VANASKIE)
STEVE PARISI, et al.                       :
                Defendants         :


M E M O R A N D U M

      This predatory lending practices action arising out of the sale of residential properties to

new home buyers in the Pocono Mountain region of Pennsylvania is before this Court on

motions to dismiss.  Defendants – consisting of real estate developers, mortgage brokers,

appraisers, and mortgage lenders – essentially challenge the viability of each of the claims

asserted by the plaintiff purchasers under federal and state law.  For the reasons that follow, the

motions to dismiss will be granted in part and denied in part.  This case will be allowed to

proceed on the claims asserted under the Racketeering Influenced and Corrupt Organizations

Act ("Racketeering Act" or "RICO"), 18 U.S.C. § 1961, et seq., against all Defendants, as well

as the claims asserted against the real estate developer, mortgage broker and appraiser

Defendants under the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 P.S. §§ 201-1, et seq.  Those claims asserted under the Home Ownership and

Equity Protection Act, 15 U.S.C. § 1602, and under the Pennsylvania common law of negligent

misrepresentation, however, will be dismissed with prejudice.  Finally, claims asserted under

the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., will be

dismissed without prejudice, affording Plaintiffs leave to amend the deficiently presented

causes of action.

 BACKGROUND

Plaintiffs are purchasers of new homes in Monroe County, Pennsylvania.  As described

in the first paragraph of the 540-paragraph complaint:[see me for rest of insert]

> This is an action on behalf of the Plaintiffs who purchased a new
> construction home, either by purchasing a lot and then entering into
> a construction loan, or by purchasing the house and lot as a unit,
> through real estate sales and new residential construction
> performed by Steve Parisi and Donald Kishbaugh and their
> affiliated companies, P&K Developers, P&K Developers, Inc., P&K
> Developers LLC, Eagle Valley Homes, Inc., Mobile Developing
> Company, Eagle Mountain Mortgage Company, Nations 1st
> Mortgage Co. LLC, Nations 1st Mortgage Company, Incorporated,
> and Nations 1st Mortgage Brokers Corp., and placed through the
> activities of Nations 1st Mortgage Co. and Bankers First Mortgage
> as mortgage brokers with New Century Corporation, Keystone
> Financial Mortgage, Irwin Mortgage Corporation DBA IFC
> Mortgage Corp., IndyMac Bank, F.S.B., Bank One, N.A., through
> the use of appraisers selected by the defendants Parisi and
> Kishbaugh and Nations First Mortgage and Bankers First
> Mortgage, namely, Lisa Marie's Appraisal Service, Inc., Lisa Marie
> Gibson, and Jenny Centrella with the agreed stated consent that
> the appraiser would provide sufficient appraisal value for the
> consummation of the land sales . . . by the Defendant Builders and
> Financiers and which mortgages were later purchased by Ocwen
> Federal Bank, Firstar Bank, N.A., Successor-in-interest to Firstar
> Bank Milwaukee, N.A., . . . Bank of America Mortgage, Irwin
> Mortgage Corporation, and West Coast Realty Services, Inc.,

wherein predatory lending activities were undertaken by the
defendants in the procurement of the mortgages and in the
placement of the mortgages with the various mortgage lenders and
in the inflated analysis by which the Plaintiffs were qualified to
procure mortgages in excess of the value that they would have
been capable of procuring had a proper and diligent examination
[been] made of their financial situation.

Plaintiffs aver that defendants Parisi, Kishbaugh and their affiliated companies[1] (the "PK

Defendants"), engaged in false advertising directed toward unsophisticated, lower income, first

time home buyers living in the New York City Metropolitan Area.  (Complaint, ¶ 47.)  Plaintiffs

charge that they were induced to purchase residential properties by misleading representations

that failed to disclose the true costs of home ownership, including the costs of real estate taxes

and maintenance.  They further assert that the PK Defendants conspired with appraisal

companies to inflate the value of the purchased properties above true market value.  The

defendant lending institutions, according to Plaintiffs, "knew or should have known that the

Pocono Region was rampant with instances of predatory lending and had excessive rates of

foreclosure on sub-prime loans and that the mortgages placed by the Bank Defendants in this

situation were of the same ilk as the prior mortgages which resulted in the foreclosure and

review by public authorities of the lending and sales practices in the Pocono Region."

---

[1] P&K Developers, LLC; Eagle Valley Homes, Inc.; Eagle Valley Homes North, Inc.;
Mobile Developing Company; Nations First Mortgage Company; Eagle Mountain Mortgage
Company; Kishbaugh &  Parisi, d/b/a P&K Developers; P & K Developers, Inc.; Nations 1st
Mortgage Company, LLC; Nations 1st Mortgage Co., Inc.; and Nations 1st Mortgage Brokers
Corp.

(Complaint, ¶ 73.)  Plaintiffs claim that there were material misrepresentations as to such matters as the amount of real estate taxes that would be required; pre-payment penalties; the necessity for and cost of private mortgage insurance; and the value of separate legal representation in connection with the transaction.  (Complaint, ¶¶ 78-92.)  Plaintiffs claim that the originating lenders in their transactions failed to follow usual and customary underwriting guidelines and due diligence procedures, ignoring the creditworthiness of the purchasers. (Complaint, ¶ 117.)  Nor did the initial lenders follow customary underwriting guidelines to determine whether the prospective mortgagors could afford the requisite monthly payments. (Complaint, ¶ 121.)  Indeed, plaintiffs charge that the lending institutions deliberately ignored the fact that good faith estimates of monthly payments were premised upon tax assessments based upon the unimproved value of the property, thereby misleading the purchasers with respect to the amount necessary to satisfy real estate tax obligations.  Plaintiffs allege that the initial lenders knew or should have known that they were procuring sub-prime loans for amounts in excess of the true value of the properties from persons who should not have been able to procure financing.  (Complaint, ¶150.)  The Complaint suggests that the originating lenders engaged in the transactions because they assumed little risk in light of the requirement that the borrowers obtain private mortgage insurance and the ability to re-sell the loans.

In this regard, Plaintiffs allege that, following the closings, the initial lenders purportedly sold the obligations "to Freddy Mac or Fanny Mae or some other pooled mortgage funds as part

4

of a larger pool of loans, thereby receiving: (a) the original principal amount of the loan . . . ; an additional approximate 3% to 4% of the gross amount of the loan as a premium; and (c) [a percentage] of each monthly mortgage payment over the life of the loan as a result of their servicing agreement with the secondary mortgage holder."  (Complaint, ¶ 134.)   Plaintiffs further charge that the lenders knew they would transfer the loan prior to the obligation becoming non-performing.  Plaintiffs claim that as evidence of the initial lending institutions' participation in a conspiracy to defraud purchasers, the lender Defendants failed to follow normal underwriting procedures; failed to confirm the source of deposit money; adopted HUD-1 settlement sheets that contained materially false information with respect to tax obligations; made improper payments to the mortgage broker controlled by the PK Defendants; failed to provide purchasers with a settlement sheet at the time of closing; and transferred or sold a mortgage after a purchaser complained of predatory lending practices without disclosing to the transferee the existence of the complaint.  (Complaint, ¶¶ 157-63.)

Plaintiffs have also named as Defendants the financial institutions to which the original loans were transferred, including Ocwen Federal Bank, Firstar Bank, N.A., Irwin Mortgage Company, Bank of America, and West Coast Realty Services, Inc.  Essentially the same allegations pertaining to knowing participation in the scheme to defraud that Plaintiffs advanced with respect to the originating lending institutions are made with respect to the secondary lenders.

The Complaint alleges in detail facts specific to each of the four sets of purchasers named as Plaintiffs in this action: Almus and Marilyn Wilson; Charmaine Cooper; Marco and Maria Yagual; and Natalie Wilson and Rayon McLean. (Complaint, ¶¶ 178-358.)  Each purchaser was purportedly induced to enter into transactions for new homes based upon misrepresentations that inflated the property's value and underestimated the costs of home ownership.  Each Plaintiff alleges post-closing disclosures that revealed the allegedly over-valued appraisals and understated home ownership costs.  The purchasers aver that they were victims "of the Defendant's scheme to defraud and . . . pattern of racketeering activity and . . . conspiracy as contemplated and operated by the Defendants in the sale of homes to unsophisticated first time home owners who are members of minority groups, who are being solicited and sold from the targeted lower income territories within the New York metropolitan region through advertisements placed in the marketplace, and purchasers who were totally unfamiliar with the cost of purchase of a home, the cost of maintenance of a mortgage, or the costs associated with the maintenance of a home in a suburban environment. . . ."  (Complaint, ¶¶ 219, 265, 301, and 358.)

The First Claim for relief asserted in the Complaint is against the PK Defendants. Plaintiffs allege that several of the PK Defendants – P&K Developers, Eagle Home, Mobile Developing Company, Nations 1st Mortgage,[2] and Eagle Mortgage, with the creation of Eagle

---

[2] Nations First Mortgage includes Nations 1st Mortgage Co., LLC, Nations 1st Mortgage
(continued...)

North, constituted an association-in-fact enterprise within the meaning of the Racketeering Act. (Complaint, ¶ 360.)  Plaintiffs further aver that Parisi and Kishbaugh conducted the affairs of this enterprise through a pattern of racketeering activity, consisting of mail and wire fraud. (Complaint, ¶¶ 390-400.)  Finally, plaintiffs aver that they have sustained injury as a result of the pattern of racketeering activity.  (Complaint, ¶ 401.)

The Second Claim for relief is premised upon an alleged conspiracy by the lending institutions with the PK Defendants.  Specifically, plaintiffs charge that the lender Defendants conspired with the PK Defendants to conduct the affairs of the alleged enterprise through a pattern of racketeering activity.  Plaintiffs aver that the lending institutions had actual knowledge of and knowingly participated in the conspiracy.  (Complaint, ¶ 413.)

The Third Claim for relief is asserted against the appraiser defendants.  Like the Second Claim for Relief, the Third Claim is based upon an alleged conspiracy, in this instance being a conspiracy between the appraisers and the PK Defendants to violate 18 U.S.C. § 1962(c).

The Fifth Claim is asserted against all defendants for alleged violations of the UTPCPL.[3] Specifically, plaintiffs assert that defendants engaged in conduct covered by this anti-fraud statute.  Although the paragraphs set within the Fifth Claim do not differentiate among

---

[2](...continued)
Company, Inc., and Nations 1st Mortgage Brokers Corp.  Plaintiffs aver that Nations 1st Mortgage was controlled by Parisi and Kishbaugh.

[3] It should be noted that the prolix Complaint does not included a Fourth Claim for relief.

Defendants, earlier averments do, and they are incorporated by reference in the Fifth Claim.

The Sixth Claim is apparently brought against all defendants for violations of the Truth in Lending Act and Regulation Z, 12 C.F.R. § 226.24(c).  Essentially, plaintiffs assert that violations of these federal laws constitute per se violations of the UTPCPL.

The Seventh Claim for Relief is asserted against only the PK Defendants.  Plaintiffs assert a "bait and switch" scheme.  Specifically, plaintiffs claim that they were induced to visit the Pocono Mountain region by advertisements depicting a house along with representations of the necessary monthly payment to acquire the house, but then were switched to different home construction and/or financing packages that were significantly more costly.  (Complaint, ¶ 502.)  Plaintiffs claim that this conduct is actionable under the UTPCPL.

The Eighth Claim is asserted against all Defendants for alleged violations of the Home Ownership and Equity Protection Act.  This legislation generally deals with consumer credit transactions secured by a principal dwelling other than a residential mortgage transaction.  See 15 U.S.C. § 1602(aa)(1).

The Ninth Claim, asserted against all Defendants pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601, is based upon alleged unlawful payment of kickbacks to mortgage brokers.  The Tenth Claim is also based upon RESPA, and is asserted against all Defendants.  This claim is based upon the failure of initial lenders to notify Plaintiffs of the transfer of the mortgages to secondary lenders.

The Eleventh Claim seeks recovery for negligent misrepresentation.  The Twelfth, and final, Claim for Relief is asserted against the PK Defendants under the UTPCPL for failure to disclose a second mortgage in favor of the PK Defendants on Plaintiffs' properties.

The Complaint asserts one prayer for relief, asking for an award of compensatory damages in excess of $1.5 billion dollars against all Defendants, jointly and severally; treble damages for sums paid by initial lenders to brokers as purported violations of RESPA, as set forth in the Ninth Claim for Relief; and damages against all Defendants, in an amount not to exceed $1,000 per Plaintiff, for the alleged violations of RESPA set forth in the Tenth Claim for relief.  In addition, Plaintiffs seek counsel fees and costs of this litigation, injunctive relief, and punitive damages.

Ten separate motions to dismiss have been filed.  With the exception of the appraiser Defendants, all moving parties have submitted memoranda of law in support of their positions.[4] Plaintiff has filed appropriate opposition briefs.  Oral argument was held on August 2, 2005, and the motions for dismissal are ripe for decision.

---

[4] Local Rule of Court 7.5 provides that a supporting memorandum of law must be filed within ten days of the filing of any pre-trial motion.  If a supporting brief is not filed within ten days, the motion is to be deemed withdrawn.  Accordingly, the Motion to Dismiss filed on behalf of Defendants Lisa Marie's Appraisal Service, Inc. and Lisa Marie Gibson (Dkt. Entry 92) will be denied based upon the application of Local Rule of Court 7.5.

## DISCUSSION

### A.     Standard of Review

The Court's task on a motion to dismiss is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . ." <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000).  In making this determination, all averments of fact, as well as all reasonable inferences to be drawn from the averments, are assumed to be true. <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996).  "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiffs' cause of action." <u>Langford</u>, 235 F.3d at 847.  A cause of action asserted in a complaint may be dismissed only if it is clear that the plaintiffs could prove no set of facts entitling them to relief.  <u>Id</u>.  The inquiry is not whether plaintiffs will or are even likely to prevail ultimately, but "only whether they are entitled to offer evidence to support their claims."  <u>Id</u>. Finally, leave to amend must be granted if a complaint is merely deficient in its allegations and there remains a possibility that the deficiencies can be cured.  <u>See</u>, <u>e.g.</u>, <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).  Each of the claims asserted in the Complaint will be assessed in the context of this narrow standard of review.

### B.     First Claim for Relief – The Racketeering Act Claim Against the PK Defendants

The First Claim for Relief is asserted against the PK Defendants, and charges a violation of 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprises's affairs through a
> pattern of racketeering activity.

As explained in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985), a § 1962(c) claim involves "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Racketeering activity includes conduct proscribed by a number of specifically identified provisions of the federal crimes code, including mail and wire fraud under 18 U.S.C. §§ 1341, 1343. See 18 U.S.C. § 1961(1). A "pattern of racketeering activity" means "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). That is, "[a]n enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" Beard v. World Wide Mortgage Corp., 354 F. Supp. 2d 789, 803 (W.D. Tenn. 2005) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

The PK Defendants argue that the First Claim for Relief is fatally deficient because the same persons and entities named as Defendants are also claimed to comprise the "enterprise." Citing B.F. Hirsch v. Enright Refining Co., Inc., 751 F.2d 628 (3d Cir. 1984), and Metcalf v. PaineWebber, Inc., 886 F.Supp. 503 (W.D. Pa. 1995), aff'd, 79 F.3d 1138 (3d Cir. 1996) (table),

11

the PK Defendants argue that the inclusion of named Defendants as constituent members of the alleged enterprise warrant dismissal of the First Claim for Relief.

Plaintiffs aver that the Racketeering Act enterprise is an association-in-fact consisting of Defendants Eagle Homes, Eagle Mortgage, Mobile Developing Co., Nations 1st, and Eagle North.  (Complaint, ¶ 386.)  Plaintiffs further aver that Parisi and Kishbaugh are associated with this enterprise, and conducted the affairs of this enterprise through a pattern of racketeering activity.

"To establish liability under § 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  State Farm Mut. Auto. Ins. Co. v. Midtown Medical Center, Inc., No. Civ. A. 02-7389, 2005 WL 627969, at *6 (E.D. Pa. March 14, 2005).  However, as a "vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity," National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994), an association-in-fact enterprise can include those individuals and entities that also are alleged to comprise the enterprise.  See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 268-69 (3d Cir. 1995).  In this regard, a corporate owner or employee "is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).

In this case, Plaintiffs have alleged an association-in-fact enterprise.  The organizations

comprising that enterprise do not encompass all PK Defendants.  For example, individual Defendants Parisi and Kishbaugh are identified as persons conducting the affairs of this association-in-fact enterprise through a pattern of racketeering activity.  These averments are sufficient to establish distinct persons and an enterprise for purposes of stating a claim under § 1962(c).  See Charles v. Chase Manhattan Bank, N.A., 308 F. Supp. 2d 545, 575-76 (D. V.I. 2004).  The fact that some entities are named as Defendants and also as components of the enterprise does not defeat the claim.  "The element of an 'enterprise' may be satisfied by alleging an 'association-in-fact' enterprise comprised of various defendants."  Id. at 576. Indeed, it has been held that "[a] complete overlap between the defendant persons and the members of an association-in-fact enterprise does not defeat the distinctiveness requirement." State Farm Mut. Auto Ins. Co. v. Midtown Medical Center, Inc., 2005 WL 627969, at *7.

The cases upon which the PK Defendants principally rely are plainly distinguishable. Hirsch was brought against a single defendant, the corporation that was alleged to be both the enterprise and the responsible party.  That situation is not presented here.  Metcalf did not concern averments of an association-in-fact enterprise that served to function as an ongoing organization.  In this case, by way of contrast, Plaintiffs have alleged that the affairs of separate corporate entities were integrated in such a manner as to facilitate the alleged scheme to defraud.[5]

---

[5] It also bears observation that the court in Metcalf allowed for a period of six months of
(continued...)

The issue at this stage of the litigation is simply whether Plaintiffs could present no set of facts that would support a claim under 18 U.S.C. § 1962(c).  Notably, Racketeering Act claims in the context of predatory lending practice schemes similar to that presented here have withstood motions to dismiss.  See e.g., Beard, 354 F. Supp. 2d at 803-08; Lester v. Percudani, Civ. A. No. 3:01-CV-1182, Memorandum Opinion at 4-6 (M.D. Pa. Feb. 21, 2003).  Under these circumstances, dismissal of the § 1962(c) is not warranted.

The PK Defendants also seek dismissal on the ground that Plaintiffs have failed to comply with the requirement of pleading fraud with particularity, as required by FED. R. CIV. P. 9(b).  "The principal purpose of the FED. R. CIV. P. 9(b) particularity requirement, when considered in context with FED. R. CIV. P. 8, is to ensure that the defendant receives fair notice of the alleged misconduct or fraudulent acts of which the plaintiff complains in order to prepare a responsive pleading."  Beard, 354 F.Supp. 2d at 799.  Although it may have been possible for Plaintiffs to better delineate the alleged actionable conduct of each particular Defendant, the Complaint contains sufficient requisite detail to achieve the purpose of Rule 9(b).  Accordingly, the Racketeering Act claim presented in the First Claim for Relief will not be dismissed on the ground that fraud has not been plead with requisite particularity.

---

[5](...continued)
discovery before determining that a viable RICO claim could not be presented.  886 F. Supp. at 506.

14

C.      Second Claim for Relief, the Conspiracy to Violate
        Section 1962(c) Asserted Against the Lender Defendants

The second claim for relief is asserted against Defendants New Century Mortgage

Corp., M & T Bank, as successor by merger to Keystone Financial Bank, Indymac Bank, Bank

One, Ocwen Federal Bank, Firstar Bank, Irwin Mortgage Corp., Bank of America, and West

Coast Realty Services, Inc.[6]  Plaintiffs claim that these financial institutions, which were involved

in financing the acquisition of their properties or otherwise became involved in the transactions

by acquiring the initial mortgages, conspired with the PK Defendants to violate 18 U.S.C. §

1962(c).  Specifically, Plaintiffs aver that these lending institutions "had actual knowledge and

knowing participation in or facilitation of the conspiracy [beginning] no later than June of 1999

continuing through and including December 12, 2001 . . . ."  (Complaint, ¶ 413.)  Plaintiffs

further allege that "[t]he object of the conspiracy was to bring each of the Plaintiffs to the point of

settlement for which the [PK] Defendants and the Bank Defendants would receive substantial

remuneration in the form of sale proceeds, settlement fees, debt service, and the ability on the

part of the Bank Defendants to resell the loans and receive new funds and continue to service

the loan after transfer or assignment so as to receive servicing fees from the loan."  (Id. at ¶

---

[6] It does not appear that West Coast Realty Services was served with process in this
matter.  In addition, it does not appear that Bank of America, for which an entry of appearance
has been made on the record, responded to the Complaint.  It should also be noted that
Bankers First Mortgage, Inc., although named as a Defendant to this action, is not named as a
defendant in the Second Claim for Relief.

414.)  Plaintiffs incorporate by reference alleged overt acts of both the originating lenders, as set forth in paragraphs 148 through 163 of the Complaint, and the secondary lenders, as set forth in paragraphs 164 through 177 of the Complaint.

The lender Defendants challenge the justiciability of the Racketeering Act conspiracy claim presented in this matter.  Specifically, they decry the failure of Plaintiffs to differentiate among the lending institutions and the failure to specify intra-conspiracy communications among Defendants.

As recently explained by our Court of Appeals, "conspiracy liability under § 1962(d) . . . is governed by the 'general principles of criminal conspiracy law' which require only that the defendant 'share[s] a common purpose' with his co-conspirators and 'knowingly agrees to facilitate a scheme, which includes the operation or management of a RICO enterprise.'" Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. Appx. 811, 818 (3d Cir. 2004).  To be liable for a Racketeering Act conspiracy, "a defendant need not personally agree to commit or commit any particular predicate act; instead, a defendant must agree and intend to further an endeavor which, if completed, would satisfy each element of the substantive offense."  United States v. Ali, No. CRIM. 04-CR-611-2, 2005 WL 2989728, at *2 (E.D. Pa. Aug. 19, 2005).  The question of whether Plaintiffs can prove the lender Defendants' knowing involvement in the overall Racketeering Act enterprise is not a matter for consideration at this stage; the only issue before the Court at the present time is the adequacy of the Complaint's allegations.  Accepting as true

the averments of the Complaint and the reasonable inferences to be drawn from those averments, Plaintiffs have adequately stated a § 1962(d) claim.  In this regard, the condition of mind elements of a conspiracy claim, such as knowledge of the conspiracy and knowing facilitation of its objectives, need only be averred generally.  FED. R. CIV. P. 9(b).

To the extent that the lender Defendants challenge the sufficiency of the allegations with respect to the existence of a Racketeering Act enterprise, the rejection of the PK Defendants' argument on that issue is equally applicable to the lender Defendants' contention.  Also unavailing is the contention that Plaintiffs have not plead injury directly attributable to a violation of § 1962(c).  The averments set forth in ¶ 401 of the Complaint are plainly adequate.

To be sure, the lender Defendants have articulated some substantial shortcomings with respect to the Complaint.  In particular, its failure to differentiate among Defendants and to specify which lender institutions may have some responsibility with respect to particular Plaintiffs is a matter of concern.  But the narrow standard of review that governs this stage of the case militates in favor of a determination that a viable Racketeering Act conspiracy claim has been presented against each of the lender Defendants identified in the Second Claim for Relief.  In this regard, Dongelewicz, on which the lender Defendants rely heavily, is not dispositive as it was decided in the context of a summary judgment motion.

Although the Racketeering Act conspiracy claim against the lender Defendants survives a motion to dismiss, the interests of the lender Defendants in avoiding unnecessary litigation

17

expenses may be addressed in a case management order structuring the discovery and

submission of further dispositive motions in this litigation.  For example, limiting discovery to the

conduct of the lender Defendants in financing new home acquisitions in the Pocono Mountain

region through the PK Defendants may facilitate a determination as to whether their

involvement was sufficiently limited so as not to support any inference of a knowing agreement

to commit predicate acts or that the predicate acts had been committed as part of racketeering

activity, thus making the <u>Dongelewicz</u> precedent applicable here.  Structuring discovery may

also provide a factual predicate for the severance of claims and/or parties.  At this stage of the

case, however, the lender Defendants' motion to dismiss the Second Claim for Relief must be

denied.

> D.      The Third Claim for Relief – a Racketeering Act Conspiracy
>         Claim Against the Appraiser Defendants

The Third Claim for Relief is brought against Lisa Marie's Appraisal, Inc. and Jenny

Centrella, appraisers who purportedly conspired with the PK Defendants to violate 18 U.S.C. §

1962(c).   As noted above, a motion to dismiss was filed on behalf of Lisa Marie's Appraisal,

Inc. as well as Lisa Marie Gibson, but a supporting brief was not submitted.[7]  Thus, the motion

to dismiss is properly deemed to have been withdrawn in accordance with Local Rule of Court

7.5.  In any event, the analysis set forth above applies with equal force to the challenge to the

---

[7] Defendant Centrella answered the Complaint, and did not move for dismissal.

Third Claim for relief asserted against the Appraiser Defendants.  Accordingly, the motion to dismiss the Third Claim for Relief must be denied.

      E.      **The Fifth Claim for Relief – Violation of the UTPCPL by All Defendants**[8]

Plaintiffs generally aver that "Defendants' acts, misrepresentations, omissions of material facts, practices, and non-disclosures alleged [in the complaint] constituted unlawful, unfair, deceptive, and fraudulent business practices and acts within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law."  (Complaint, ¶ 435.) Plaintiffs then identify some specific conduct alleged to violate particular provisions of the UTPCPL.  For example, they allege that "Defendants represented that the houses being sold had characteristics, in the form of value and monthly payments, they did not have in violation of 73 P.S. Section 201-2(4)(v)."[9]  (Id. at ¶ 437.)  Plaintiffs further aver that "Defendants made misleading and deceptive statements and omissions concerning the value and the financing of the houses being purchased by consumers with the intent that consumers rely on their statements concerning the value of the house and the financing therefor," in violation of 73 P.S.

---

[8] As noted above, the Complaint omits a Fourth Claim for Relief.

[9] Section 201-2(4)(v) unfair or deceptive acts or practices as "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have."

§ 201-2(4)(ix).[10]  (Complaint, ¶ 444.)  Plaintiffs further charge all Defendants with conduct falling

within the following subparts of the statutory definition of unfair or deceptive acts or practices

set forth in § 201-2(4):

> (i) Passing off goods or services as those of another;
>
> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
>
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
>
> (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

(Complaint, ¶¶ 461 and 481.)  Plaintiffs claim to be persons who have been injured as a result

of these specific unfair or deceptive acts or practices, and therefore entitled to seek redress as

---

[10] Section 201-2(4)(ix) makes it an unfair or deceptive act or practice to advertise goods or services with the intent not to sell them as advertised.

authorized by 73 P.S. § 201-9.2.[11]

The UTPCPL, although generally addressing goods and services, also extends to the marketing and sale of residential real estate.  See e.g., In re Zisholtz, 226 B.R. 824, 831 (Bankr. E.D. Pa. 1998); Kramer v. Dunn, 749 A.2d 984 (Pa. Super. 2000).  In particular, the catch-all provision set forth in § 201-2(4)(xxi) has been recognized as applying to residential real estate transactions.  See, e.g., Lester v. Percudani, Civil Action No. 3:01-CV-1182, Memorandum Opinion at 13-15 (M.D. Pa. Feb. 21, 2003); In re Barker, 251 B.R. 250, 261-62 (Bankr. E.D. Pa. 2000).

The PK Defendants challenge the Fifth Claim for Relief on the ground that unfair or deceptive acts or practices have not been alleged with requisite particularity.[12]  For the reasons set forth above, I find that the pleading requirement of Rule 9(b) is met as to the PK

---

[11] Section 201-9.2(a) provides:

> Any person who purchases or leases goods or services primarily
> for personal, family or household purposes and thereby suffers any
> ascertainable loss of money or property, real or personal, as a
> result of the use or employment by any person of a method, act or
> practice declared unlawful by Section 3 of this act, may bring a
> private action to recover actual damages . . . .

Section 3 declares unlawful the unfair or deceptive acts or practices identified in § 201-2(4).

[12] The PK Defendants also argued that this Court should decline to exercise supplemental jurisdiction over this state law claim.  That argument was premised upon an assumption that Plaintiffs could not present a viable federal law claim.  Because the Racketeering Act claim has withstood the motion to dismiss, this Court may properly exercise supplemental jurisdiction over the related state law claims.

Defendants.  They have generally been apprised of the approximate time frame, responsible party, and general nature of the alleged actionable conduct.  They know, for example, that plaintiffs claim that misrepresentations were made in advertising directed to the New York metropolitan region, in appraisals secured for purposes of supporting financing, and in estimates of monthly obligations that home ownership would entail.  The averments specific to the purchases made by each of the plaintiffs identify entities responsible for engaging in alleged deceptive acts or practices.  (Complaint, ¶¶ 178-358.)  Accordingly, the PK Defendants' challenge to the sufficiency of the Fifth Claim for Relief must be denied.

A contrary conclusion, however, is compelled with respect to the lender Defendants' challenges to the Fifth Claim for Relief.  Each set of Plaintiffs dealt with different lender Defendants.  The averments as to each particular transaction indicate that the degree of participation of each lender Defendant varied from transaction to transaction.  For example, in the Almus and Marilyn Wilson transaction, the initial lender Defendant, New Century Mortgage Corp., is alleged to have never contacted the plaintiffs.  (Complaint, ¶ 196.)  Plaintiffs nowhere indicate what specific fraudulent conduct is chargeable to New Century.  Apparently, Ocwen Federal Bank serviced this loan, but again there is no specific averment as to any particular deceptive act or practice undertaken by this Defendant that caused any Plaintiff any particular harm.  The same point may be made with respect to Firstar Bank, which ultimately acquired the loan.

Defendant Bankers First Mortgage, by way of contrast, is alleged to have played a more active role in the Cooper transaction.  For example, it allegedly selected the appraiser who over-valued the property.  (Complaint, ¶ 233.)  No specific unfair or deceptive practice, however, is attributed to Bankers First.

The same observation may be made with respect to all other lender Defendants.  They have been lumped together with the PK and appraiser Defendants, without any delineation of responsibility.

Because each lender Defendant's participation in the transaction varied, it is imperative that notice of particular unfair or deceptive acts or practices be provided as to each lender Defendant.  See In re Johnson, 292 B.R. 821, 827-28 (E.D. Pa. Bankr. 2003). The Complaint clearly fails to meet this basic pleading obligation.  Accordingly, the lender Defendants motions to dismiss the Fifth Claim for Relief will be granted.[13]

> F.   The Sixth Claim for Relief – Violation of the UTPCPL
>      by All Defendants Based upon Violations of the
>      Federal Truth in Lending Act and Regulation Z

The Sixth Claim for Relief asserts violations of 15 U.S.C. § 1664(d) and 12 C.F.R. §

---

[13] Plaintiffs, of course, will be granted leave to amend to attempt to cure this patent pleading defect.  See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Plaintiffs are cautioned that they must allege with particularity the elements necessary to support a violation of the UTPCPL as to a particular Defendant.  Moreover, Plaintiffs are admonished to abide by FED. R. CIV. P. 11 in presenting such a claim against an individual lender Defendant.

226.24(c)(1).[14]  Plaintiffs assert that alleged violations of these federal law provisions constitute

per se violations of the UTPCPL.

The lender Defendants have moved for dismissal of this Claim for Relief as there is no

averment in the Complaint that any lender Defendant engaged in any advertising pertinent to

this case.  Plaintiffs have not identified any paragraph in the Complaint to contradict this

assertion.  Accordingly, the lender Defendants challenge to the Sixth Claim for Relief is

_____

[14] Section 1664(d) of Title 15 U.S.C. provides:

Requisite disclosures in advertisement

If any advertisement to which this section applies states the
amount of the down payment, if any, the amount of any installment
payment, the dollar amount of any finance charge, or the number of
installments of the period of repayment, then the advertisement
shall state all of the following items: (1) The down payment, if any.
(2) The terms of repayment. (3) The rate of the finance charge
expressed as annual percentage rate.

Section 226.24 of 12 C.F.R.., known as Regulation Z, provides:

If any of the following terms is set forth in an advertisement, the
advertisement shall meet the requirements of paragraph (c)(2) of
this section: (i) The amount or percentage of any down payment.
(ii) The number of payments or period of repayment.  (iii) The
amount of any payment.  (iv) The amount of any finance charge.

Paragraph (c)(2) of Regulation Z provides that an advertisement stating any of the terms set
forth in paragraph (c)(1) must include the following: (i) the amount or percentage of the down
payment; (ii) the terms of repayment; (iii) the annual percentage rate, using that term, and, if the
rate may be increased after consummation, that fact.

meritorious, and they will be dismissed as Defendants to the Sixth Claim for Relief.[15]

> G.   Seventh Claim for Relief – Violations of the UTPCPL by
>       PK Defendants Based Upon an Alleged Bait and Switch
>       Unfair Trade Practice

Plaintiffs base the Seventh Claim for Relief on averments that advertisements placed by

the PK Defendants in newspapers and on the radio in the New York City metropolitan area

concerned home and financing packages different than those ultimately presented to the

Plaintiffs.  Specifically, plaintiffs aver:

> Defendants designed their advertising and solicitation programs to
> entice customers, including the instant Plaintiffs, with low down
> payment and monthly payment amounts.
>
> Defendants intended to primarily offer home and finance programs
> more costly to consumers and more profitable to the Defendants.
>
> Defendants deliberately planned to offer a home and financing
> program that initially appeared attractive to consumers while
> knowing, through marketing research and their own experience,
> that the consumers could easily be switched to more elaborate
> homes and more costly financing.

(Complaint, ¶¶ 503-05.)

The PK Defendants do not directly challenge the viability of this claim at the pleadings

stage, other than to assert a lack of particularity.  Given the fact that the nature of the alleged

---

[15] Again, the dismissal will be without prejudice to the filing of an amended complaint
against any lender Defendant a particular Plaintiff may claim in good faith participated in a
violation of 15 U.S.C. § 1664(d) or Regulation Z.

deceptive practice is set forth with clarity and that the PK Defendants are in the best position at the present time to determine which of the entities controlled by Parisi and/or Kishbaugh were involved in the advertising, dismissal of this claim for relief is not warranted.  In this regard, our Court of Appeals has admonished the district courts to be "'sensitive' to the fact that application of [Rule 9(b)] prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'"  Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992).

> H.   The Eighth Claim for Relief – Violation of the Home Ownership and Equity Protection Act by All Defendants

The Complaint alleges that all Defendants violated the disclosure requirements of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1639, et seq. Acknowledging the force of Defendants' arguments that HOEPA only applies to "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction," 15 U.S.C. § 1602(aa)(1), Plaintiffs have withdrawn the HOEPA claim as to all Defendants other than Defendant Bank One.  As to Bank One, plaintiffs argue that the claim is not subject to dismissal because it was "a second mortgage on the McLean/Wilson transaction."  (Brief in Opp. to Bank Defendants' motions to dismiss (Dkt. Entry 66) at 21.)

Bank One is alleged to have provided a "secondary mortgage loan" in the amount of $47,000 in connection with the McLean/Wilson transaction.  (Complaint, ¶¶ 334-335.)  Plaintiffs aver that this transaction closed at the same time as the closing on the principal transaction, and required execution of a second mortgage.

As noted above, "a residential mortgage transaction" is not subject to HOEPA.  A "residential mortgage transaction" is defined to mean "a transaction in which a mortgage, or equivalent consensual security interest is created or retained against the consumer's dwelling <u>to finance the acquisition or initial construction of such dwelling</u>."  15 U.S.C. § 1602(w)(emphasis added).  The mortgage in favor of Capital One was created in order to enable McLean/Wilson to finance the acquisition of the dwelling in question.  Accordingly, HOEPA does not apply to this transaction.  As HOEPA does not apply at all to this litigation, the Eighth Claim for Relief will be dismissed with prejudice.

I.      **Ninth Claim for Relief – Violation of Anti-Kickback Provisions of the Real Estate Settlement and Procedures Act by all Defendants**

The Ninth Claim for Relief alleges that all Defendants violated the anti-kickback and unearned fee prohibitions of the Real Estate Settlement and Procedures Act (RESPA), expressed in 12 U.S.C. § 2601(b) and § 2701(a).[16]  Plaintiffs articulate this claim in the following paragraphs:

---

[16] Section 2601(b)(2) states that it is the intent of Congress to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain [real estate] settlement services."  Section 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

518.  Upon information and belief, a lender kickback to a mortgage broker for the placement of the loan is forbidden.

519.  Upon information and belief, the instant Plaintiffs HUD-1 Settlement Statement include references to fees being paid by the Lender to the mortgage broker.

520.  Violation of this provision of federal law is treble damages.

521.  As a result of the violation of these provisions, the Plaintiffs seek to recover the sums representing treble damages of the sums paid by the Lender to the Defendant Broker in each instance.

All Defendants, with the exception of Defendant Bank One, have moved to dismiss this claim for relief as legally insufficient and as barred by the one-year statute of limitations set forth in 12 U.S.C. § 2614.[17]  Defendants, noting that RESPA , expressly permits payment of different types of fees for services and facilities, see 12 U.S.C. § 2607(c); Schuetz v. Banc One Mortgage Corp., 292 F.3d 1004, 1005-06 (9th Cir. 2002), assert that the utter failure of Plaintiffs to identify (a) any particular fee or payment proscribed by RESPA; (b) who paid the fee; and (c) who received the alleged improper fee render the Ninth Claim for Relief fatally deficient. Plaintiffs have not countered defendants' showing.

Significantly, a particular plaintiff may have a RESPA anti-kickback claim against a particular defendant or defendants, but no plaintiff would have a RESPA claim against every

---

[17] In pertinent part, § 2614 provides that "[a]ny action pursuant to the provisions of Section . . . 2607 . . . of this title may be brought in . . . any . . . court of competent jurisdiction . . . within one year . . . from the date of the occurrence of the violation . . . ."

28

defendant.  It is imperative that a particular plaintiff identify a particular defendant or defendants

implicated in an alleged illegal payment in order to afford adequate notice of the basis for such a

claim.

Plaintiffs acknowledge that this action has been brought more than one year after the

real estate closings in question, but claim that this claim is saved from dismissal on grounds of

equitable tolling.  In order to invoke this doctrine, however, each plaintiff must aver the facts and

circumstances particular to that plaintiff and purportedly responsible defendant.  See Mullinax v.

Radin Guaranty, Inc., 199 F. Supp. 2d 311, 330-31 (M.D. N.C. 2002) (to avoid dismissal of

otherwise time-barred RESPA claim plaintiff must allege with particularity "'how, when, and in

what manner' [defendant] and the lenders entered into any agreement to conceal their alleged

kickback scheme.").  Plaintiffs' generic assertion of fraudulent concealment in paragraphs 381

and 382 of their Complaint is woefully inadequate for this purpose.[18]  Indeed, there are no

---

[18] Paragraphs 381 and 382 aver as follows:

> The running of any statute of limitation has been tolled by reason of
> the defendants' fraudulent concealment.  Defendants, through their
> affirmative misrepresentations and omissions, actively concealed
> from the plaintiffs that they were purchasing homes at fraudulently
> inflated prices.

> As a result of the Defendants' actions, Plaintiffs were unaware, and
> could not have reasonably known or have learned through
> reasonable diligence, that they had been defrauded as the direct
> and proximate result of Defendants' actions, until such time as the
> true value of their homes was discovered, either through an

(continued...)

averments specific to any alleged fraudulent concealment of purportedly proscribed payments.

Accordingly, the Ninth Claim for Relief must be dismissed.  Plaintiffs, however, will be given leave to file an amended complaint with respect to the matter of allegedly prohibited payments.  Plaintiffs are admonished that each set of purchasing plaintiffs must identify the fees they claim to have been improper, who paid the fees, who received the fees, the amount of the fees, and why the fees were improper.  Such a claim may be asserted only against the generator and recipient of the purportedly improper payment.  Plaintiffs and Defendants may not be lumped together.  Furthermore, each plaintiff must allege with particularity the facts and circumstances supporting equitable tolling of the limitations period on the basis of fraudulent concealment.  If plaintiffs fail to so amend their Complaint, the Ninth Claim for Relief will be dismissed with prejudice.  See Mullinax, 199 F. Supp. 2d at 336.

>    J.    Tenth Claim for Relief – Violation of RESPA Notice
>          Provisions by All Defendants

The Tenth Claim for Relief charges all Defendants with failing to provide notice of the transfer of the servicing of a mortgage loan or notice of the assignment, sale or transfer of the servicing of the mortgage loan as required by 12 U.S.C. § 2605.  This claim suffers from the same fatal deficiencies that required dismissal of the Ninth Claim for Relief.  First, Plaintiffs fail to identify which particular Defendants purportedly breached the notice provisions set forth in 12

---

[18](...continued)
> attempt to refinance, or foreclosure proceeding, or when the
> Defendants' fraud was first exposed by the Pocono Record.

U.S.C. § 2605.  Indeed, most of the named Defendants would have no potential culpability on such a claim.  For example, the Indymac mortgage is not alleged to have been transferred. Second, no Plaintiff has alleged a basis for tolling the three-year limitations period that applies to a claim based upon an alleged violation of § 2605.  Accordingly, the Tenth Claim for Relief will be dismissed with leave to amend.  Plaintiffs are again cautioned that a particular Plaintiff must identify a particular defendant or defendants allegedly responsible for breach of the notice provisions of § 2605, indicating how the notice provisions were purportedly violated.  In addition, each Plaintiff must plead with particularity the facts and circumstances claimed to warrant tolling of the limitations period.

### K.    Eleventh Claim for Relief – Negligent Misrepresentations by All Defendants

Plaintiffs have acknowledged that the economic loss doctrine bars this particular common law tort claim.  Accordingly, the Eleventh Claim for Relief will be dismissed, with prejudice.

### L.    Twelfth Claim for Relief – Violation of the UTPCPL by the PK Defendants

The Twelfth Claim for Relief asserts a claim against only the PK Defendants for violation of the UTPCPL in connection with the alleged non-disclosure that the PK Defendants "had taken sums at the time of the closing for a second mortgage."  (Complaint, ¶ 534.)  The PK Defendants have moved for dismissal of this claim for failure to plead fraud with particularity.

They have not, however, pressed any other challenge to the viability of this claim for relief. Because the Complaint does satisfy the particularity requirements of FED. R. CIV. P. 9(b) with respect to averments of fraud, and the precise nature of the alleged deceptive conduct at issue in the Twelfth Claim for Relief has been asserted, the motion to dismiss the Twelfth Claim for Relief will be denied.

### M.      Motions for More Definite Pleading and to Strike Impertinent Matter

Defendants have also moved to require Plaintiffs to re-plead, asserting that much of the lengthy pleading is too vague or ambiguous to allow for a meaningful responsive pleading. Defendants also rail against the indefinite nature of many of the Complaint's averments, which fail to distinguish among either Plaintiffs or Defendants.

These issues have been addressed to a large degree in determining whether viable claims for relief have been presented against particular defendants in this matter.  For example, the UTPCPL claims against the lender Defendants and the RESPA claims against all Defendants must be amended by specifying conduct attributable to a particular party and for which a particular plaintiff may seek recovery.  The Racketeering Act claims have been found to be adequate, and Plaintiffs will not be required to file a more definite pleading as to those particular claims.

Defendants have also moved to strike the demand for damages of $1.5 billion.  This demand for relief is plainly improper, and will be stricken from the Complaint.  In any amended

complaint, Plaintiffs must comply with Local Rule of Court 8.1, which states that a party "may set forth generally that the party claiming damages is entitled to monetary relief but shall not claim any specific sum where unliquidated damages are involved."

## CONCLUSION

For the reasons set forth in the foregoing Memorandum, Defendants' motions to dismiss will be granted in part.  Specifically, the Eighth and Eleventh Claims for Relief will be dismissed with prejudice.  The Fifth and Sixth Claims for Relief against the Lender Defendants, and the Ninth and Tenth Claims for Relief against all Defendants will be dismissed with leave to amend. The amount of damages claimed in the Complaint will be stricken.  In all other respects, the motions to dismiss will be denied.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ALMUS WILSON, MARILYN WILSON,         :
CHARMAINE COOPER, MARCO YAGUAL,  :
MARIA YAGUAL, NATALIE WILSON, and   :
RAYON MCLEAN                                         :
                       Plaintiffs       :
                         :
     v.                                               :          3:CV-04-1737
                         :          (CHIEF JUDGE VANASKIE)
STEVE PARISI, et al.                               :
                Defendants      :


O R D E R

NOW, THIS 7th DAY OF FEBRUARY, 2006, for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  The Motion to Dismiss filed on behalf of defendants Lisa Marie's Appraisal Service,

Inc. and Lisa Marie Gibson (Dkt. Entry 92) is, in light of the failure to file a supporting

memorandum of law, **DENIED**.

2.  The motions to dismiss of the remaining defendants (Dkt. Entries 17, 19, 22, 24, 41,

43, 50, 56 and 82) are **GRANTED IN PART** as follows:

      a.  The Eighth and Eleventh Claims for Relief set forth in the Complaint are

**DISMISSED, WITH PREJUDICE,** as to all Defendants.

      b.  The Fifth and Sixth Claims for Relief are **DISMISSED, WITHOUT**

**PREJUDICE,** as to Defendants M & T Bank, successor by merger to Keystone Financial Bank

d/b/a Keystone Financial Mortgage; Bank One, N.A.; Indymac Bank, F.S.B.; Firstar Bank, N.A.;

Ocwen Federal Bank, F.S.B.; New Century Mortgage Corporation; Irwin Mortgage Corp., d/b/a IFC Mortgage Corp.; and Bankers First Mortgage, Inc.

      c.  The Ninth and Tenth Claims for Relief are **DISMISSED, WITHOUT PREJUDICE**, as to all Defendants.

      d.  Plaintiffs' claim for damages is **STRICKEN**.

    3.  Plaintiffs shall file an amended complaint within **twenty (20) days** from the date of this Order.  Failure to file an amended complaint will result in the dismissal, with prejudice, of the Fifth and Sixth Claims for relief against the defendants identified in paragraph 2(b) of this Order and the dismissal with prejudice of the Ninth and Tenth Claims for Relief against all Defendants.

    4.  A case management conference shall be conducted on **Monday, April 24, 2006 at 10:30 a.m.** in Room 401 of the William J. Nealon Federal Building & U.S. Courthouse, 235 N. Washington Avenue, Scranton, PA.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

2