IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALMUS WILSON, et al. | : | |
|     Plaintiffs | : | |
| v. | : | 3:CV-04-1737 |
| | : | (JUDGE VANASKIE) |
| STEVE PARISI, et al. | : | |
|     Defendants | : | |

ORDER

March 26, 2007

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Plaintiffs in this matter claim Defendants engaged in a predatory lending scheme aimed at new home buyers in the Pocono Mountain region of Pennsylvania. Previously, this Court dismissed all claims against Defendants Bank One, N.A. and IndyMac Bank, F.S.B., except a claim by Plaintiffs Rayon McLean and Natalie Wilson brought under the Racketeering Influenced and Corrupt Organizations Act ("Racketeering Act" or "RICO"), 18 U.S.C. § 1961, et seq.[1] Wilson v. Parisi, No. 3:CV-04-1737 (Dkt. Entry 104) (M.D. Pa. Feb. 7, 2006). Bank One and IndyMac have moved for judgment on the pleadings on this remaining claim, arguing that Mr. McLean and Ms. Wilson lack standing to seek relief under

---

[1] According to the Complaint, Mr. McLean and Ms. Wilson reside at a property that Ms. Wilson purchased through Defendants' alleged predatory lending scheme. (Compl. (Dkt. Entry 1) ¶ 7; see also Reply Answer (Dkt. Entry 144) ¶ 3.)

the Racketeering Act. (Dkt. Entries 147 and 148.)[2]

### A. Mr. McLean's Standing

Mr. McLean alleges that Bank One and IndyMac participated in a fraudulent scheme that targeted inexperienced home buyers. Mr. McLean, however, admitted in his answer to IndyMac's counterclaim that he did not actually purchase any property. (Reply Answer (Dkt. Entry 144) ¶ 3.) Rather, Mr. McLean resides in a home purchased by his wife, Ms. Wilson. (See Compl. (Dkt. Entry 1) ¶ 7; Schedule 1, Ms. Wilson's Bankr Pet., IndyMac's Mot Pl. Ex. C (Dkt. Entry 148-6).) Bank One and IndyMac argue that Mr. McLean lacks standing to present a Racketeering Act claim because, as a matter of law, he was not an intended victim of the alleged fraudulent scheme.

In order to maintain a suit in federal court, a plaintiff must establish standing. See, e.g., UPS Worldwide Forwarding, Inc. v. U.S. Postal Service, 66 F.3d 621, 625 (3d Cir. 1995). In addition to constitutional standing requirements, "federal courts have developed prudential standing considerations 'that are part of judicial self-government.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). One of the prudential standing requirements is that "a litigant assert his or her own legal interests rather than those of third

---

[2] Bank One has recently moved for summary judgment, in which it has reasserted its standing challenge to the Racketeering Act claim presented against it. (Dkt. Entry 212.) As a result of the disposition of its Motion for Judgment on the Pleadings, the motion for summary judgment will be dismissed.

2

parties." Id. Bank One and IndyMac argue that Mr. McLean fails to satisfy this standing requirement, as he is attempting to recover on the basis of the alleged violation of Ms. Wilson's legal interest, not his own.

Mr. McLean does not directly address Defendants' argument. Instead, he states that Defendants' "argument was reviewed in the court's original consideration of the Rule 12 (b)(6) motions of the parties and the court's prior opinion reviewed the allegations of the complaint and determined that the complaint as drafted permitted this case to go further." (Pls.' Br. Opp. (Dkt. Entry 150) at 7.)

Contrary to this assertion, the Court did not previously consider Defendants' argument. Instead, the Court assessed "the adequacy of the Complaint's allegations." Wilson v. Parisi, No. 3:CV-04-1737 (Dkt. Entry 104), slip op. at 16-18 (M.D. Pa. February 7, 2006). Despite "some substantial shortcomings with respect to the Complaint," the Court found Plaintiffs' allegations sufficient to survive the "narrow standard of review" under Rule 12(b)(6). Id. at 17.

One of the shortcomings of the complaint was its failure to "specify which lender institutions may have some responsibility with respect to particular Plaintiffs." Id. In his answer to IndyMac's counterclaim, Ms. McLean clarifies that he was not a purchaser of a property financed by Bank One or IndyMac. He therefore lacks standing to pursue a RICO claim against Bank One or IndyMac. See Gagliardi v. Kratzenberg, 188 Fed. Appx. 86, 88-

2

89 (3d Cir. 2006) (finding a plaintiff lacked standing to assert a RICO claim on property owned by third parties). Mr. McLean's RICO claim against Bank One and IndyMac will therefore be dismissed.

### B. Ms. Wilson's Standing

Bank One and IndyMac argue that Ms. Wilson also lacks standing to pursue her claim against them because the claim became the property of her bankruptcy estate after she filed a Chapter 7 bankruptcy petition. Though Ms. Wilson did not identify the Racketeering Act claim in her bankruptcy petition, (See Ms. Wilson's Bankr Pet., IndyMac's Mot Pl. Ex. C (Dkt. Entry 148-6)), Defendants aver that the causes of action had accrued before she filed her bankruptcy petition. (IndyMac's Br. Supp (Dkt. Entry 14) at 12-16.) As a result, Defendants contend that the claim was the property of the bankruptcy estate. (Id. (citing Gersten v. First Horizon Home Loan Corp., No. 1:04-cv-1779, slip op. at 4-5 (M.D. Pa. Jul. 13, 2005) and Anderson v. Acme Mkts., Inc., 287 B.R. 624, 628-29 (Bankr. E.D. Pa. 2002)).)

Ms. Wilson contends that she has standing because she maintained a property interest in the mortgage of the property following her bankruptcy discharge. (Pl.'s Br. Opp. (Dkt. Entry 150) at 8-9.) This argument, however, does not undermine the well-settled principle that a bankruptcy estate encompasses "'causes of action existing at the time' the bankruptcy action commences." Anderson, 287 B.R. at 628 (quoting Cain v. Hyatt, 101

3

B.R. 440, 441-42 (E.D. Pa.1989)); accord Krank v. Utica Mut. Ins. Co., 109 B.R. 668, 669 (E.D. Pa.), aff'd. mem., 908 F.2d 962 (3d Cir. 1990). This is because Ms. Wilson's bankruptcy creditors were entitled to the claim if it had monetary value. Krank, 109 B.R. at 669 (citing First National Bank v. Lasater, 196 U.S. 115, 119 (1905)). While Ms. Wilson's mortgage *obligation* may have survived the bankruptcy discharge,[3] her potentially valuable legal claims remained the property of the bankruptcy estate, unless the bankruptcy trustee abandoned them. See, e.g., Anderson, 287 B.R. at 629 ("A debtor may regain standing to pursue a cause of action if it is abandoned by the Trustee.").

Ms. Wilson also argues that she was not aware of Bank One and IndyMac's alleged misconduct before she filed her bankruptcy petition. (Pl.'s Br. Opp. (Dkt. Entry 150) at 9-14.) According to Ms. Wilson, her RICO claim did not accrue until she became "aware of the alleged misconduct by the Banking Defendant[s]." (See id. at 9-11.) As such, she seems to be claiming that a RICO claim accrues when a plaintiff discovers, or should have

---

[3] Ms. Wilson relies on In Re: Charles Newton Kreeger and Melissa Kay Kreeger, No. 7-99-03738-WSA-7, 2001 Bankr. LEXIS 2193, at *15 (Bankr. W.D. Va. Sep. 5, 2001), as supporting her position that she has standing to pursue her RICO claims because they passed through the bankruptcy proceeding with her mortgage obligation. The debtors in that case, however, did not seek to pursue a legal cause of action that accrued before the bankruptcy action commenced. Instead, they sought bankruptcy protection against a bank's threatened foreclosure on their residence. Id. at *5-6. The bankruptcy court found that the bank maintained a right to foreclose on the debtors residence, because the mortgage obligation passed through the bankruptcy proceeding. Id. at *17. The case is not relevant to whether a legal cause of action passes through a bankruptcy proceeding.

4

discovered, both an injury <u>and a pattern of RICO activity</u>. This position was directly rejected in <u>Rotella v. Wood</u>, 528 U.S. 549, 555 (2000) (finding the "injury and pattern discovery rule unsound"). Rather, a Racketeering Act cause of action accrues "when the plaintiffs knew or should have known of their <u>injury</u>." <u>Forbes v. Eagleson</u>, 228 F.3d 471, 484 (3d Cir. 2000) (emphasis added).

In this case, Ms. Wilson knew or should have known of her injury well before she filed for bankruptcy. "[W]ithin one year" of her September 2000 closing, Ms. Wilson knew she had "a note and mortgage at a rate that [she was] not able to afford." (Compl. (Dkt. Entry 1) ¶ 98.) "After attempting to eke out the mortgage payments for about one year," she received notice that her monthly obligations would be greater than the amounts represented to her at closing due to a tax assessment change. (<u>Id.</u> ¶ 99.) Indeed, Ms. Wilson learned that the true value of her home was far lower than the pre-closing appraisal. (¶¶ 320, 338-40.) Based on this information, Ms. Wilson should have known of her RICO injury before she filed her bankruptcy petition on January 23, 2003. (IndyMac's Mot. Pl. Ex. D (Dkt. Entry 148-7).)

Because Ms. Wilson's RICO claims accrued before she filed her bankruptcy petition, the claims are the property of the bankruptcy estate.[4] Consequently, Ms. Wilson does not

---

[4] Ms. Wilson may, of course, "petition the bankruptcy court to reopen proceedings to allow that court to decide whether the trustee should enforce the claim for the benefit of creditors or abandon it." <u>See</u> <u>Krank</u>, 109 B.R. at 669.

5

have standing to pursue the claims. See Krank, 109 B.R. at 669.

For the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

1. Bank One's Motion for Judgment on the Pleadings (Dkt. Entry 147) is **GRANTED**.

2. IndyMac's Motion for Judgment on the Pleadings (Dkt. Entry 148) is **GRANTED**.

3. Bank One's Motion for Summary Judgment (Dkt. Entry 212) is **DISMISSED**.

4. Defendants Bank One and IndyMac are **DISMISSED** from this action.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge
